Good morning to everyone. We'll take the argued cases in the order in which they appear on the calendar, and I would like to just remind the appellants that the time that shows on the little clock is the entire time, including your rebuttal. So if you want to save rebuttal, we'd love to help keep track of your time. The final case on the calendar, Mass v. Long, has been submitted on the briefs. We'll begin with Halaim v. Ashcroft. Thank you, Your Honor. Good morning. May it please the Court and Counsel. My name is Rocco Trapiti. I'm the attorney for the petitioners in this matter. The petitioners are sisters who are seeking reversal of a decision by the BIA to deny their petitions for asylum. They seek reversal on the merits and also on the basis that they were denied due process at their hearing. I would like to reserve two minutes for rebuttal. Counsel, it seems to me that although this is a very sad case, and one could wonder why the government has chosen to try to send these harmless old ladies back, that there's substantial evidence for the proposition that they suffered discrimination but not persecution at the hands of the government. Why is what happened to them persecution? I think I can agree with the initial part of your statement and also put the rest of it into context. As the record reflects and as these two individuals in particular should be seen, they have spent a lifelong – they have a lifelong history of not having been educated, of having been submissive by their very religion and by their very actions. They're almost stoic. They receive punishment without fighting back. What we may call – the case law does not require that you receive physical punishment in order to be persecuted. It's also clear that there is a line, that discrimination and lack of opportunity don't necessarily equate to persecution. It has to be more awful than – and in particular, it has to be related somehow to the government and not to fellow citizens. Correct. And that was the next point I was going to get to, which is that while the record doesn't have any specific actions by the government other than actions by the police and non-action by the police when they've filed complaints and that type of thing, there are also many references within the record to the acknowledgement by Congress and the various studies within the record that acknowledge that the evangelical Christians have been persecuted in the Ukraine over the course of time and that these two sisters fit squarely within that group of people that is referred to as the was designed to address. So that's the best I can do for the court in terms of the record that's before you, is referred to the many references to the historical context as well as to the individuals. I'd like to quickly review just a few points with respect to the procedural history on the due process matter. The sisters came to this country in 1995. The INS took action in December of 1996 and ordered them to appear at a show cause hearing in February of – to be held in February of 1997. They appeared. They did not have counsel. They had an interpreter with them. They were given time to get an attorney. They could not find an attorney because they didn't have financial resources. They had been given a continuance in order to find an attorney. In May of 1997, a trial was ordered and scheduled for February 3rd of 1998. They finally got in with the Immigrants' Rights Project literally four days, as I understand it, according to the record, before that hearing. And they were able to start the trial. They at least had counsel and an interpreter. And the trial started on February 3rd. At the end of that first day of the hearing, the immigration judge noted that she had already determined that she was going to deny their petitions for asylum, even though counsel for both sisters had indicated that there was additional evidence, and as it turned out, a substantial amount of documentary evidence to be presented. And one of the sisters hadn't even testified as yet. That was quite significant. And as you look at the judge's decision, which was issued on April 30th of that year on the second day of the trial, it's pretty clear that what the judge had was what was done on February 3rd, what was submitted on February 3rd, but not much reference, if any, to any of the voluminous materials that were submitted on April 20th, which was 10 days before the hearing as required. There's only a minor notation to counsel's brief, to counsel's legal argument, but not to any of the documents, not to any of the evidence that was submitted 10 days before that hearing. It's also notable that that 30-plus page written decision was published the same day as the trial. So clearly what we have is an I.J. that had predetermined the outcome before the testimony had been completed, without reference to the voluminous information that had been presented by the petitioners. The INS indicates that there's no reference in the record to the judge having a predisposition. I would point the Court to C.A.R. pages 249 and 250, which is where counsel for the petitioners indicated to the Court the predisposition or the reference to a decision having already been made and the Court's acknowledgement of that position. Well, counsel, it's often the case that a judge will say, here's how I'm thinking about this case as things stand now. So if you want to persuade me, you need to know how I'm thinking about it now. Is that improper? I mean, that happens every day of the week, and it seems to me that that's what happened in this record, too, to the extent that we can tell, is that the I.J. was, if anything, just revealing thinking to the petitioner's lawyer so that additional arguments could be responsive to those concerns. What's wrong with that? I don't know that there's anything necessarily wrong, and it happens all the time, that judges indicate their line of thinking. However, in this case, to state that I'm going to deny, that there's an indication that the petitions are going to be denied before receipt of the documentary evidence and so forth goes a little further. But isn't that exactly the situation? It's unless you give me something more, I'm going to have to deny these petitions, and then something more came in. So why isn't that kind of the ordinary course? And then we would have to assume that that additional material was looked at. And unfortunately for your class, it didn't persuade. But I don't see why that's a due process violation. I don't read the record, I guess, the way the Court is stating it right now. The unfortunate thing in this particular record is that the discussion that you are referring to is not expressly stated in the record. I can assume that possibly that was the nature of the discussion. Who has the burden of demonstrating a due process violation? The petitioners in this matter do, Your Honor. So if the record is unclear about whether there might or might not be a due process violation, why would that be a decision in your favor? The record states that the I.J. indicated she was going to deny the petitions. It doesn't say why. It then goes on to, again, as I've indicated, on April 30th, the day when the trial was continued, there's a 32-page decision prepared. Even though that the – and I don't know whether it was prepared before or after. There's a portion. The one portion of that decision that refers to the hearing on the 30th is the small portion dealing with, I believe, Maria's testimony. The rest of that appears to have been – and I can't identify that it was prepared in advance. But the fact that it was published that day certainly is indicative of the fact that this matter had been predisposed. Counsel, your time is about to expire, but we'll restore a little bit of time for rebuttal since we took up quite a bit of it. Thank you. Hello? May it please the Court. My name is Robert Loeb from the Department of Justice, and I represent the Respondent in this case and the first three cases this morning, the Attorney General. In this case, the immigration judge rejected the asylum claim of the petitioners, finding that the discrimination and harassment that they endured during the 1950s and the 1960s due to their religious beliefs did not amount to past persecution under the asylum statute. The immigration judge, however, went on to hold that even if those facts could constitute past persecution, there had been a dramatic change of circumstances in the country since 1986, and that changed circumstance would rebut any presumption of future persecution, which would arise from the persecution in the 1950s and 1960s, even if one assumed that the facts supported that. Both of these alternative holdings of the immigration judge are fully supported by substantial evidence and must be sustained. First, as to the future persecution based on the changed country conditions, that's really dispositive in this case, and there's no need to address the past persecution claim. The State Department report here, which is in the record at page 316 of the administrative record, says that Ukraine today has separation of church and state in its constitution, and that it is honored by the state, and that the state does not interfere with religious practice anymore. At page 316, it says, with the overthrow of the communist regime in 1991, evangelicals are no longer denied religious freedom, and they worship without interference. Now, this Court has repeatedly said that those types of State Department reports are to be given significant weight, and not in all cases are they dispositive, but here there is no evidence contradicting the State Department report. The plaintiff's own testimony concede that today they are free to practice, without state interference, their religion. At page 284 of the administrative record, they admit they can freely attend church today. In Plaintiff's brief on appeal, they cite two items to sort of rebut the State Department report, but neither of them are persuasive. One of them, at page 373 and 374 of the administrative record, is regarding Russia, not Ukraine. And the other item they rely on, there's only two, at page 386 of the administrative record, doesn't even suggest persecution of Pentecostals in Ukraine. It instead discusses questions about registration of churches. And finally, the plaintiffs concede that they didn't come here to escape persecution in Ukraine. They came here as visitors, and after six months they decided they liked staying here, which is completely understandable. But, however, that supports the notion that they were not coming here to escape persecution. Because of the changed country conditions, there's really no need to even address the question of past persecution, but I'm happy to do so if you would like. As Your Honor said, there is evidence here of substantial harassment and discrimination back in the 1950s and 60s, but the immigration judge acted within her discretion here in saying that it didn't amount to the level of persecution. Your present counsel didn't discuss this at oral argument today, but what is your response to the arguments concerning the Lautenberg Amendment? Well, by its very terms, it refers to people applying for refugee status from abroad, as we explain in our brief, and does no application to an asylum application here in the United States. It's under a different provision of the INA. And their argument is that that is an equal protection violation because they are similarly situated to their friends and neighbors at home who applied for asylum. Well, as we explain in our brief, first of all, the standard review is highly deferential. It's even more deferential than rational basis review, as long as there's a facially legitimate reason for the classification. Well, here the legislative history explains that Congress was addressing a particular problem they were having with how the claims were being administered and processed abroad, and not how they were being processed here in the United States. Moreover, there's a significant difference. When you say they're similarly situated, they certainly are not. When an asylum claim is made in the United States by an immigration official in the first instance, if it's erroneous, you can have a hearing before an immigration judge, you can then appeal to the BIA and appeal to this court. To the extent there's an error in assessing the record in this country, there is a lot of due process and chance for reversal of those errors. Abroad, once the decision is made to reject the refugee status, that's it. There is no review. So Congress can make a decision that there's a problem with the way that those claims are being administered abroad in the Eastern Europe and former Soviet Union, and to have a specific remedy addressing that. They're not similarly situated, and it's certainly a rational classification. If there's no further questions, I'll ---- I think we have none. Thank you. Hmm? I think we don't have any further questions. I thank you. Thank you. Mr. Tripiti, we'll restore a couple of minutes of rebuttal time since we ---- Thank you. I appreciate that, Your Honor. Thank you. I'll be brief. I believe the history to the Lautenberg Amendment underscores the problem with the due process matter in this case. Congress recognized the problem in the Ukraine, directed the field representatives in Europe to do what the IJ, I assert, failed to do in this case. Had the same standard been applied to these two sisters, we wouldn't be before this Court today. The manner in which this matter was conducted ignores the call of that amendment. The record reads as if the IJ did exactly what the field representatives in Europe were instructed not to do by Congress, with respect to the assumptions that were made. Just as field representatives are under tremendous pressures to deal with the many folks that they have seeking refugee status, immigration judges have the same difficulties. They're faced with many, many folks coming before them with language barriers, with time pressures, and all the rest of it that goes with that ---- with the immigration system itself. The standards that Congress imposed for the ---- under the Lautenberg Amendment should be applied to the Petitioners in this matter. Thank you. Thank you, counsel. The case just argued is submitted. And we will turn next to the case of Henoch v. Ashcroft. I'm mispronouncing some of these names.
judges: Brunetti, Tg Nelson, Graber